UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DESIREE ALLAIRE

Plaintiff,

v.

JODAN KALEMRA, alias, a/k/a JODAN KALEMBA, RYDER TRUCK RENTAL, LT., RTRT, INC. in its capacity As trustee for the Ryder Truck Rental, Lt. RYDER TRUCK RENTAL, INC., IRON MOUNTAIN OFF-SITE DATA, INC. f/k/a ARCUS DATA SECURITY, INC., JOHN DOES 1-5

Defendants.

CIVIL ACTION NO. 03-CV-12566 RWZ

**DEFENDANTS', KALEMBA JODAN, IRON MOUNTAIN INFORMATION MANAGEMENT, INC. AND RYDER TRUCK RENTAL, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

The Defendants, Kalemba Jodan (herinafter "Jodan"), Iron Mountain Information Management, Inc. (hereinafter "Iron Mountain") and Ryder Truck Rental (hereinafter "Ryder") (collectively "Defendants"), hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment dismissing the Plaintiff's, Desiree Allaire ("Plaintiff"), claims against the Defendants for negligence, negligent hiring and supervision, negligent maintenance and respondeat superior, respectively. For the following reasons, the Defendants' Motion for Summary Judgment should be granted:

1. **The Plaintiff's Claims Necessarily Fail Where There Is No Admissible Evidence To Support A Reasonable Inference That Any Allegedly Negligent Act and/or Omission of Jodan In Operating The Subject Ryder Van Was a Proximate Cause Of The Accident;**

**A. Where There Is No Admissible Evidence That Jodan Was Negligent In His Operation Of The Subject Ryder Truck, The Plaintiff's Claim For Negligent Hiring And Supervision Must Also Fail.**

**B. Where There Is No Admissible Evidence That Jodan Was Negligent In His Operation Of The Subject Ryder Truck, The Plaintiff's Claims Against Iron Mountain And Ryder For Respondeat Superior Must Fail.**

**2. In The Absence Of An Expert Opinion That Any Of The Defendants Should Reasonably Have Known That The Subject Tire Was Unreasonably Dangerous And/r Defective prior To Its Failure, he Plaintiff's Claims Necessarily Fail.**

## STATEMENT OF UNDISPUTED FACTS

A complete recitation of the Statement of Undisputed Facts is set forth in the accompanying Concise Statement and is incorporated by reference herein. This lawsuit involves a motor vehicle accident that occurred on December 24, 2000, on Route 3 (FE Everett Turnpike) in Nashua, NH between a pick-up truck in which the Plaintiff was a passenger and a 1998 GMC van ("Van") owned by Ryder Truck Rental ("Ryder"). See Appendix A, Complaint at ¶¶8-11.[1] At the time, the van had been rented by Iron Mountain Off-Site Data Protection, Inc. f/k/a Arcus Data Security, Inc. ("Iron Mountain") from Ryder, and was driven by an Iron Mountain employee, Kalemba Jodan ("Jodan"). The pick-up truck was operated by Scott Peters.

Trooper Sean O'Leary of the New Hampshire State Police responded to the accident. According to Trooper O'Leary's Accident Report, both vehicles were traveling in a southerly direction on Route 3, a five lane highway, with Jodan traveling in the inside center lane and the pick-up truck in the outside center lane. See Appendix B, State of New Hampshire Uniform Police Traffic Accident Report ("Accident Report").

[1] The referenced appendices are attached to the Affidavit of Mark B. Lavoie, Esq. submitted herewith.

Following the accident, Jodan reported to Trooper O'Leary that "he was traveling in the center lane when the van began to shake", and "the van began to swerve uncontrollably." Id. He reported that "his van and the truck collided." Id.

Trooper O'Leary stated in the Accident Report that upon examination, he determined that with respect to the Ryder truck

> . . . the right rear tread had completely separated from the tire with the exception of a small portion of the outside of the tread which was still attached. From this brief examination, I determined that this was not a knew [sic] tire but a reconditioned tire commonly known as a retread. **It was unclear to me why this happened. From speaking with the listed witnesses, nothing led me to believe that the vehicle (Vehicle 1) was being operated in a reckless manner, or a manner beyond the capabilities of the vehicle or its equipment.**

Id. (emphasis added). Trooper O'Leary also stated in the Accident Report that he found no evidence of driver impairment. Id. Furthermore, no citations were issued to Jodan. Id. Trooper O'Leary further stated in the Accident Report "it is my determination that the crash was the result of defective equipment which was beyond the control of either driver." Id. [2]

---

[2] Trooper O'Leary's Report is admissible pursuant to Federal Rules of Evidence Rule 803 (8) "Public records and reports", which provides: " Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness". (emphasis added). See, for example, Lubanski v. Coleco Industries, Inc., 929 F.2d 42 (1st Cir. 1991), citing, Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)("As long as the conclusion is [1] based on a factual investigation and [2] satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report"). To the extent Trooper O'Leary's Report refers to witness

Trooper O'Leary recovered the tire "cap" from the scene and forwarded it to the National Highway and Traffic Safety Administration (NHTSA). See Appendix C, O'Leary February 15, 2001 Letter. Trooper O'Leary has indicated that once an investigation is completed by the NHTSA, all evidence is destroyed. Id. It is understood that the NHTSA did not complete an investigation of the subject tire cap and no longer has possession of the tire cap. No parties have possession, or ever had possession, of the tire cap. No parties examined the subject tire cap following the accident. The discovery deadline in this case has passed.

On December 19, 2003, the Plaintiff filed suit against the Defendants for alleged personal injuries that she sustained as a result of the subject accident. See Appendix A, Complaint. The Plaintiff's claims against the Defendants sound in negligence (Count I), negligent hiring and supervision (Count II), negligent maintenance (Count III), and respondeat superior (Count IV and Count V). Id. With respect to the Plaintiff's negligence claim, the Plaintiff alleged the following in her Complaint:

> "14. At the same time and place, the van owned by Defendant Ryder LT and operated by Defendant Kalemra [sic] was so negligently, carelessly and recklessly driven and operated that it

---

statements within his report, such witness statements are likewise admissible under Federal Rule of Evidence 803(1) where the statements were given shortly after the accident was perceived and 803(24) where the totality of the circumstances surrounding the statements establish their reliability sufficiently enough to justify foregoing in-court testimony. While the trustworthiness inquiry is largely fact driven, here, there are no substantive inconsistencies between what Trooper O'Leary reported as information received from the parties and their respective deposition testimony. Moreover, two additional witness are identified who were not involved in the accident and who are unlikely to have had any bias in responding to Trooper O'Leary's inquiries. Trooper O'Leary further notes that his factual findings are based on his observations of the vehicles, evidence he observed at the scene and the statements of the parties involved, which were "supported by the witnesses" identified in the report.

> struck the automobile occupied by Plaintiff Allaire causing severe and permanent injuries as hereinafter alleged to Plaintiff Allaire."

Id. Count I at ¶ 14. With respect to the Plaintiff's negligent hiring and supervision claim, the Plaintiff alleged the following in her Complaint:

> "18. By information and belief, Defendant Kalemra [sic] was unqualified to operate the subject van and untrained and unprepared to encounter emergency conditions on the highway.
>
> 19. Defendant Arcus hired Defendant Kalemra [sic] to operate the van notwithstanding Defendant Kalemra's [sic] unfitness or lack of training for the position, of which Arcus knew or should have known."

Id. Count II at ¶¶18-19. With respect to the Plaintiff's negligent maintenance claim, the Plaintiff alleged the following in her Complaint:

> "22. Defendant Kalemra [sic] lost control of his vehicle after his tire tread separated from the tire.
>
> 23. The tire on the vehicle being operated by Defendant Kalemra [sic] was a reconditioned tire, commonly known as a 're-tread'. The tire was placed or caused to be placed on the vehicle by Defendant, Arcus, Defendant Ryder LT and/or Defendant Ryder with full knowledge of its condition. Defendants Arcus, Ryder LT and Ryder had a duty to inspect and maintain the vehicle, and keep it in good repair, in a manner that is safe for highway travel. Defendants Arcus, Ryder LT and Ryder knew or should have known, through regular inspection and maintenance, that the tire was unfit for use, that it was subject to failure, and that it presented a danger to the public."

Id. at Count III, ¶¶23-25. With respect to the Plaintiff's Respondeat Superior claim, the Plaintiff alleged the following in her Complaint:

> 29. At the time Defendant Kalemra [sic] was operating the Ryder LT motor vehicle as described above, he was acting at the direction of Defendant Arcus and within the scope of his authority and in furtherance of his employment or agency relationship with this defendant.

30. The negligence of Defendant Kalemra [sic] is therefore imputed to Defendant Arcus under the basic principles of respondeat superior.

31. The accident and resulting damages and injuries to Plaintiff Allaire were caused by the negligence of the Defendants and without any negligence on the part of Plaintiff Allaire, who was in the exercise of due care at the time of the accident.

Id. at Count IV, ¶¶29-31.

## SUMMARY JUDGMENT STANDARD

"A motion for summary judgment must be granted if '[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" See Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37, 42-43 (D.Mass. 1995), citing, Fed.R.Civ.P. Rule 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then "shifts to the non- moving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." See Copy Cop, Inc., 908 F.Supp. at 43, quoting, Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). The nonmoving party "must adduce specific, provable facts which establish that there is a triable issue." Id. "Rule 56(e) 'requires nonmovants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment." See Copy Cop, Inc., 908 F.Supp. at 43, quoting, FDIC v. Fonesca, 795 F.2d 1102, 1110 (1st Cir. 1986).

Moreover, proof that an accident has occurred is not alone enough to prove that there was negligence by anyone. Inferences are reasonable only where they are based on

probabilities rather than possibilities. Ferragamo v. Massachusetts Bay Transportation Authority, 395 Mass. 581, 590 (1985); Poirier v. Plymouth, 374 Mass. 206, 212 (1978); Alholm v. Wareham, 371 Mass. 621, 626-27 (1976). A plaintiff in a negligence action must demonstrate "a greater likelihood" that his injuries were caused by negligence of the defendant than by some other cause. Alholm, supra. at pp. 626-27. "While a plaintiff need not show the exact cause of the accident or exclude all other possible causes, he must show that there is a greater probability than not that the accident resulted from the defendant's negligence." Enrich v. Windmere Corporation, 416 Mass. 83, 87, 616 N.E.2d 1081 (1993).

## ARGUMENT

### I. The Plaintiff's Claims Necessarily Fail Where There Is No Admissible Evidence To Support A Reasonable Inference That Any Allegedly Negligent Act and/or Omission of Jodan In Operating The Subject Ryder Van Was a Proximate Cause Of The Accident.

Simply stated, the Plaintiff cannot satisfy her burden of proving at trial that Jodan was negligent and that said negligence proximately caused or contributed to the subject accident. As set forth above, the Plaintiff's negligence claim asserts that the subject van operated by Jodan was "so negligently, carelessly and recklessly driven and operated that it struck the automobile occupied by the Plaintiff Allaire causing severe and permanent injuries as hereinafter alleged to Plaintiff Allaire." See Appendix A, Count I at ¶ 14. However, there is no admissible evidence in the record to suggest that Jodan was negligent in his operation of the subject van either immediately prior to the tire failure of immediately after the tire failure.

Rather, the evidence in the record indicates that the subject accident occurred because the tire cap on the subject van came off, causing Jodan to lose control of the van.

See Appendix B, Accident Report. Trooper O'Leary specifically stated in his Accident Report that he could find **"no evidence of driver impairment."** See Appendix A, Accident Report. He further stated that **"nothing led me to believe that the vehicle was being operated in a reckless manner, or a manner beyond the capabilities of the vehicle or its equipment."** Id. Moreover, **no citations were issued to Jodan for driver error.** Id. Furthermore, Trooper O'Leary determined that the accident occurred as a result of defective equipment **which was beyond the control of either driver.** Id.

Where the Plaintiff cannot present any evidence that Jodan was operating the van in a negligent manner, the Plaintiff's negligence claim should be dismissed. See 11 MAPRAC, Motor Vehicle Law And Practice §3.5 (3d. ed. 2006)("The mere happening of an accident caused by a defective condition of the vehicle is not evidence of the owner or operator's negligence"), citing, Pellegatti v. Pellegatti, 345 Mass. 591 (1963)(Where a front tire on a motor vehicle blew out and caused an accident, findings were not warranted that the tire was defective or that the defendant was negligent, or evidence that the defendant owner of the vehicle had prior knowledge that the treads in the tires were "not good", that the "tires were bad", and that the tire which blew out was "bald"). See also, 61 C.J.S. Motor Vehicles § 1039 (May 2006)("The doctrine of res ipsa loquitur does not apply, and an inference or presumption of negligence may not be made, where an injury results from the blowout of a tire. Rather, the Plaintiff must establish that the tire was defective and that the defect was known or could have been discovered by the exercise of reasonable care")(citing cases). See also, 8 Am. Jur. 2d Automobiles and Highway Traffic § 831 (May 2006)("Where it is not shown that the owner or operator had knowledge, or should have had knowledge, of the defective condition of the tires, the

resulting accident is considered to have been unavoidable and he cannot ordinarily be held liable")(citing cases). The Plaintiff cannot demonstrate "a greater likelihood" that her injuries were caused by negligence of the Defendants than by, for example, a latent manufacturing defect or a foreign object. See Alholm, supra. at pp. 626-27. The cause of the tire failure is unknown and incapable of determination given the removal of the tire from the scene by Trooper O'Leary and apparent destruction of the tire by the NTSB, which is described more fully below. The burden is appropriately placed upon the Plaintiff to prove negligence and not on the Defendants to prove a negative.

**A. Where There Is No Admissible Evidence That Jodan Was Negligent In His Operation Of The Subject Ryder Truck, The Plaintiff's Claim For Negligent Hiring And Supervision Must Also Fail.**

With regard to the Plaintiff's negligent hiring and supervision claim, Plaintiff bears the burden to establish Iron Mountain knew, or should have known, that the Jodan had a proclivity to commit the complained-of acts – alleged unfit operation of a motor vehicle - and that Iron Mountain nevertheless failed to take corrective action. See, for example, RLI Insurance Company v. Wood Recycling, Inc. v. International Insurance Group, Ltd., 2006 WL 839514 *4(D.Mass. 2006); citing Vicarelli v. Business Int'l, Inc., 973 F.Supp. 241, 246 (D.Mass. 1997). The Plaintiff's negligent hiring claim against Iron Mountain is premised upon, and solely derivative of, the Plaintiff's claim that Jodan was operating the subject van in a negligent manner at the time of the accident. Specifically, the Plaintiff alleges that Kalemba was "unqualified to operate the subject van and untrained and unprepared to encounter emergency conditions on the highway." See Appendix A, Complaint, Count II ¶18. Furthermore, the Plaintiff alleges that Kalemba was hired "to operate the van notwithstanding Defendant Kalemra's [sic] unfitness or

lack of training for the position, of which Arcus knew or should have known." Id. at Count II ¶19. As discussed infra, there is no admissible evidence in the record that would support a reasonable inference that Jodan was negligent in his operation of the van, where it was determined by Trooper O'Leary that the accident did not occur because of any negligence on Jodan's part. . See Appendix B, Accident Report. Furthermore, there is no admissible evidence that would support a reasonable inference that Jodan had a proclivity towards "reckless" driving, or that Iron Mountain knew or should have known of such proclivity. See RLI Insurance Company, supra. Accordingly, the Plaintiff's negligent hiring and supervision must fail where such claims are wholly unsupported.

**B. Where There Is No Admissible Evidence That Jodan Was Negligent In His Operation Of The Subject Ryder Truck, The Plaintiff's Claims Against Iron Mountain And Ryder For Respondeat Superior Must Fail.**

Under Massachusetts law, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for torts of its employee, or servant, committed within the scope of employment. See Pearce v. The Duchesneau Group, Inc. 392 F.Supp.2d 63, 76 (2005); citing Kavanagh v. Trustees of Boston University, 440 Mass. 195, 198 (2003). The Plaintiff's respondeat superior claim against Iron Mountain, is necessarily premised upon, and solely derivative of, the Plaintiff's claim that Jodan was operating the subject van in a negligent manner at the time of the accident. The Plaintiff alleges in her Complaint that the "negligence of Defendant Kalemra [sic] is... imputed to Defendant Arcus under the basic principles of respondeat superior." See Appendix A, Complaint, Count IV ¶30.

As discussed above, the record does not support the Plaintiff's allegations that Jodan was negligent. Accordingly, there is no negligence to impute to Iron Mountain

under the theory of respondeat superior, and the Plaintiff's claim must fail. Moreover, the Plaintiff's claim for respondeat superior against Ryder must fail where Jodan was neither an employee nor an agent of Ryder. Accordingly, the Plaintiff's claims against Iron Mountain and Ryder sounding in respondeat superior must fail.

**II. In The Absence Of An Expert Opinion That Any Of The Defendants Should Reasonably Have Known That The Subject Tire Was Unreasonably Dangerous And/r Defective prior To Its Failure, he Plaintiff's Claims Necessarily Fail.**

Moreover, the Plaintiff cannot prevail on her claim for negligent maintenance where there is no evidence in the record to suggest that the subject tire blew due to a failure to properly inspect and/or maintain the subject van. Where the Plaintiff's burden can only be met by offering an opinion involving technical matters beyond the scope of ordinary experience, expert testimony is required. See, for example, Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993)(the presence of a defect cannot be inferred in the absence of expert testimony); Kennedy v. U-Haul Co., 360 Mass. 71, 74 (1971)(expert testimony used to establish that bolts on a truck should have been checked with a torque wrench). Even assuming, for purposes of argument, that the subject tire was defective when the subject van was last serviced, Plaintiff cannot offer any admissible evidence, nor has the Plaintiff proffered any expert opinion, that any of the Defendants knew or should have known that the tire was defective. See Shaw v. Pimental, 2000 WL 1298853 (Mass.Super 2000)(allowing defendant's motion for summary judgment dismissing claim for negligent inspection and repair where the plaintiff failed to offer evidence that the defendant auto body repair shop should have discovered a fracture in a "suspension knuckle" when making repairs). In Shaw, the Superior Court stated that summary judgment was warranted and stated:

> As a matter of law, without expert opinion to establish the standard as to what Maple Street [Defendant auto repair ship] reasonably should have done to detect the fracture, Shaw [Plaintiff] has no reasonable expectation of proving an essential element of her case, namely that Maple Street owed her a duty to detect the fracture

See Shaw v. Pimental, at *3.

In the present case, the evidence establishes that the subject van was a 1999 GMC van owned by Ryder and designated by Ryder as vehicle #368077. The subject van was put in service by Ryder on 10/2/99 and rented to Iron Mountain. Pursuant to the Rental Agreement, Ryder serviced and maintained the van at regular intervals based upon the reported odometer readings and on an as needed basis when Iron Mountain reported a problem. Ryder electronically maintained a "Vehicle Control Card" in its ordinary course of business to record maintenance operations and repairs to the subject vane. The Vehicle Control Card for the subject van discloses regular preventive maintenance inspection, with the last pre-accident preventive maintenance inspection occurring on October 24, 2000. See Appendix D, Vehicle Control Card. On October 24, 2000, Ryder conducted, among other things, a "Tire and Wheel Inspection" in which the tires were checked for "irregular or alignment wear", "cuts, tears or bulges", "mismatched tread or casing design", and "cracks, loose lugs/outer hub leaks". See Appendix E, Inspection Report. Also, the tread depth and PSI were recorded, and the valve stems and caps were checked. Id. No defects were found and/or noted. Id. The subject van was returned to service without any indication of any problem with the right rear tire. Accordingly, there is no admissible evidence that the Defendants failed to inspect and maintain the subject Van.

Equally significant, the Plaintiff (like the plaintiff in Shaw) has failed to designate any expert to testify regarding what the Defendants knew or reasonably should have know with regard to the alleged defective tire. According to Trooper O'Leary, the tire h removed from the scene has been discarded or is otherwise unavailable for inspection. Immediately following the accident, custody of the subject tire was taken by the New Hampshire State Police and then given to the NHTSA which, according to its practice, destroyed the tire. The NHTSA did not issue any report with respect to its examination of the tire. **No party to this case ever had possession of the tire before it was destroyed.** Accordingly, the Plaintiff can only speculate that the tire was negligently maintained or otherwise defective and cannot show with admissible expert testimony that that the Defendants knew or should have known of any alleged tire defects. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999)(expert testimony is admissible only if it is both relevant **and reliable**); Carifio v. Benetton Sportsystem, 2005 WL 1527801 *2 (D.Mass.)(expert opinion testimony must be based upon sufficient facts or data and be the product of reliable principles and methods applied reliably to the facts of the case. Moreover, "inferences must be reasonable and must be based on probabilities rather than possibilities and may not be the result of mere speculation and conjecture"), citing Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 101 (1988).

Pursuant to the relevant caselaw, expert testimony is clearly necessary in this case in order to establish causation, where the cause of the tire's failure is outside the factfinder's realm of common knowledge. The instant case is directly analogous to the facts set forth in Kumho Tire Company, Ltd., supra, in which the plaintiffs brought a products liability action against the tire manufacturer and distributor for injuries sustained

when the right rear tire on a vehicle failed. The U.S. Supreme Court held that the "gatekeeping" function set forth under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, which imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable, applies not only scientific expert testimony, but **all expert testimony**. Id. at 137. In applying the Daubert analysis, the U.S. Supreme Court excluded the tire failure analyst's expert [Dennis Carlson, Jr.] testimony that the subject tire failed due to a manufacturing or design defect on the ground that it did not satisfy Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) **the testimony is based upon sufficient facts or data**, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. Rule 702 (emphasis added). In its holding, the Supreme Court stated that "[t]he question was not the reliability of Carlson's methodology in general, but rather whether he could reliably determine the cause of failure of the particular tire at issue." Kumho at 140. Carlson's opinion that the tire blew because of a defect in the tire's manufacture or design, was based upon a visual and tactile inspection of the tire and upon the theory that in the absence of at lest two of four specific, physical symptoms indicating tire abuse, the tire failure of the sort that occurred here was caused by a defect. Kumho at 137. In the instant case, any expert testimony presented by the Plaintiff at trial cannot possibly survive a Daubert analysis where there is no tire to examine.

**CONCLUSION**

Defendants, Kalemba Jodan (herinafter "Jodan"), Iron Mountain Information Management, Inc. (hereinafter "Iron Mountain") and Ryder Truck Rental (hereinafter "Ryder") (collectively "Defendants"), request that this Court enter summary judgment for all the reasons set forth above, and dismiss Plaintiff's, Desiree Allaire, claims against them in this case.

Respectfully submitted,

The Defendants,
Kalemba Jodan, Iron Mountain Information Management, Inc. and Ryder Truck Rental
By their attorney,

Mark B. Lavoie, BBO# 553204
McDonough, Hacking & Lavoie, LLC
One Washington Mall
Boston, MA 02108
(617) 367-0808

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing pleading on all parties by electronic service, to all counsel of record.
Signed under the pains and penalties of perjury.

DATED: August 30, 2006