UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DESIREE ALLAIRE<br><br>    Plaintiff,<br>v.<br><br>JODAN KALEMRA, alias, a/k/a<br>JODAN KALEMBA, RYDER TRUCK<br>RENTAL, LT., RTRT, INC. in its capacity<br>As trustee for the Ryder Truck Rental, Lt.<br>RYDER TRUCK RENTAL, INC.,<br>IRON MOUNTAIN OFF-SITE DATA,<br>INC. f/k/a ARCUS DATA SECURITY,<br>INC., JOHN DOES 1-5<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 03-CV-12566 RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS', KALEMBA JODAN, IRON MOUNTAIN INFORMATION
MANAGEMENT, INC. AND RYDER TRUCK RENTAL,
<u>CONCISE STATEMENT</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, the Defendants, Kalemba Jodan (herinafter "Jodan"), Iron Mountain Information Management, Inc. (hereinafter "Iron Mountain") and Ryder Truck Rental (hereinafter "Ryder") (collectively "Defendants"), hereby submit this Concise Statement of Material Facts in support of its Motion for Summary Judgment. Based on the material facts presented herein, the Defendant's Motion for Summary Judgment should be granted insofar as there is no genuine issue of material fact that can be in dispute in this case.

**I.    <u>Material Facts</u>**

The Defendant states that for the purposes of this Motion for Summary Judgment, the material facts as to which there is no genuine issue to be tried are as follows:

1.  This lawsuit involves a motor vehicle accident that occurred on December 24, 2000, on Route 3 (FE Everett Turnpike) in Nashua, NH between a pick-up truck in which the Plaintiff was a passenger and a 1998 GMC van ("Van") owned by Ryder Truck Rental ("Ryder"). See Appendix A, Complaint at ¶¶8-11.[1]

2.  The Van was designated by Ryder as vehicle #368077 and was rented to Iron Mountain Off-Site Data Protection, Inc. Arcus Data Security, Inc. ("Iron Mountain"). Pursuant to the Rental Agreement, Ryder serviced and maintained the van at regular intervals based upon the reported odometer readings and on an as needed basis when Iron Mountain reported a problem.

3.  Ryder electronically maintained a "Vehicle Control Card" in its ordinary course of business to record maintenance operations and repairs to the subject vane. See Appendix D, Vehicle Control Card. The Vehicle Control Card for the subject van discloses regular preventive maintenance inspection, with the last pre-accident preventive maintenance inspection occurring on October 24, 2000. Id.

4.  On October 24, 2000, Ryder conducted, among other things, a "Tire and Wheel Inspection" in which the tires were checked for "irregular or alignment wear", "cuts, tears or bulges", "mismatched tread or casing design", and "cracks, loose lugs/outer hub leaks". See Appendix E, Inspection Report. Also, the tread depth and PSI were recorded, and the valve stems and caps were checked. Id. No defects were found and/or noted. Id. The subject van was returned to service without any indication of any problem with the right rear tire.

---

[1] The referenced appendices are attached to the Affidavit of Mark B. Lavoie, Esq. submitted herewith.

5.  At the time of the subject accident, the Van was being driven by an Iron Mountain employee, Kalemba Jodan ("Jodan"). The pick-up truck involved in the accident was driven by Scott Peters.

6.  Trooper Sean O'Leary of the New Hampshire State Police responded to the accident.

7.  According to Trooper O'Leary's Accident Report, both vehicles were traveling in a southerly direction on Route 3, a five lane highway, with Jodan traveling in the inside center lane and the pick-up truck in the outside center lane. See Appendix B, State of New Hampshire Uniform Police Traffic Accident Report ("Accident Report").

8.  Jodan reported to Trooper O'Leary that "he was traveling in the center lane when the van began to shake", and "the van began to swerve uncontrollably." Id. He reported that "his van and the truck collided." Id.

9.  Trooper O'Leary stated in the Accident Report that upon examination, he determined that with respect to the Ryder truck

> . . .the right rear tread had completely separated from the tire with the exception of a small portion of the outside of the tread which was still attached. From this brief examination, I determined that this was not a knew [sic] tire but a reconditioned tire commonly known as a retread. It was unclear to me why this happened. **From speaking with the listed witnesses, nothing led me to believe that the vehicle (Vehicle 1) was being operated in a reckless manner, or a manner beyond the capabilities of the vehicle or its equipment.**

Id. (emphasis added).

10. Trooper O'Leary also stated in the Accident Report that he found no evidence of driver impairment. Id.

11.    Furthermore, no citations were issued for driver error in this crash. Id.

12.    Trooper O'Leary stated in the Accident Report "it is my determination that the crash was the result of defective equipment which was beyond the control of either driver." Id.

12.    Trooper O'Leary recovered the tire "cap" from the scene and forwarded it to the National Highway and Traffic Safety Administration (NHTSA). See Appendix C, O'Leary February 15, 2001 Letter.

14.    According to Trooper O'Leary, once an investigation is completed by the NHTSA, all evidence is destroyed. Id. 12. The NHTSA did not complete an investigation of the subject tire cap, and it no longer has possession of the tire cap.

15.    No parties have possession, or ever had possession, of the tire cap. No parties examined the subject tire cap following the accident.

16.    The discovery deadline in this case has passed.

17.    On December 19, 2003, the Plaintiff filed suit against the Defendants for alleged personal injuries that she sustained as a result of the subject accident. See Appendix A, Complaint.

18.    The Plaintiff's claims against the Defendants sound in negligence (Count I), negligent hiring and supervision (Count II), negligent maintenance (Count III), and respondeat superior (Count IV and Count V). Id.

19.    With respect to the Plaintiff's negligence claim, the Plaintiff alleged the following in her Complaint:

> "14.    At the same time and place, the van owned by Defendant Ryder LT and operated by Defendant Kalemra [sic] was so negligently, carelessly and recklessly driven and operated that it

> struck the automobile occupied by Plaintiff Allaire causing severe and permanent injuries as hereinafter alleged to Plaintiff Allaire."

Id. Count I at ¶ 14.

20. With respect to the Plaintiff's negligent hiring and supervision claim, the Plaintiff alleged the following in her Complaint:

> "18. By information and belief, Defendant Kalemra was unqualified to operate the subject van and untrained and unprepared to encounter emergency conditions on the highway.
>
> 19. Defendant Arcus hired Defendant Kalemra to operate the van notwithstanding Defendant Kalemra's unfitness or lack of training for the position, of which Arcus knew or should have known."

Id. Count II at ¶¶18-19.

21. With respect to the Plaintiff's negligent maintenance claim, the Plaintiff alleged the following in her Complaint:

> "22. Defendant Kalemra lost control of his vehicle after his tire tread separated from the tire.
>
> 23. The tire on the vehicle being operated by Defendant Kalemra [sic] was a reconditioned tire, commonly known as a 're-tread'. The tire was placed or caused to be placed on the vehicle by Defendant, Arcus, Defendant Ryder LT and/or Defendant Ryder with full knowledge of its condition. Defendants Arcus, Ryder LT and Ryder had a duty to inspect and maintain the vehicle, and keep it in good repair, in a manner that is safe for highway travel. Defendants Arcus, Ryder LT and Ryder knew or should have known, through regular inspection and maintenance, that the tire was unfit for use, that it was subject to failure, and that it presented a danger to the public."

Id. at Count III, ¶¶23-25.

22. With respect to the Plaintiff's Respondeat Superior claim, the Plaintiff alleged the following in her Complaint:

29.  At the time Defendant Kalemra [sic] was operating the Ryder LT motor vehicle as described above, he was acting at the direction of Defendant Arcus and within the scope of his authority and in furtherance of his employment or agency relationship with this defendant.

30.  The negligence of Defendant Kalemra [sic] is therefore imputed to Defendant Arcus under the basic principles of respondeat superior.

31.  The accident and resulting damages and injuries to Plaintiff Allaire were caused by the negligence of the Defendants and without any negligence on the part of Plaintiff Allaire, who was in the exercise of due care at the time of the accident.

Id. at Count IV, ¶¶29-31.

## II.  Legal Elements

### A.  Summary Judgment Standard.

1.  "A motion for summary judgment must be granted if '[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" See Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37, 42-43 (D.Mass. 1995), citing, Fed.R.Civ.P. Rule 56.

2.  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

3.  The burden then "shifts to the non- moving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." See Copy Cop, Inc., 908 F.Supp. at 43, quoting, Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

4.    The nonmoving party "must adduce specific, provable facts which establish that there is a triable issue." Id.

5.    "Rule 56(e) 'requires nonmovants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment." See Copy Cop, Inc., 908 F.Supp. at 43, quoting, FDIC v. Fonesca, 795 F.2d 1102, 1110 (1st Cir. 1986).

**B.    Negligence**

6.    In order to prevail on a negligence claim, the Plaintiff must show 1) a legal duty owed by the defendant to the plaintiff; 2) a breach of that duty; 3) proximate or legal Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986)("party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party").

7.    "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted". Anderson, 477 U.S. at 249-50. Although the issue of proximate cause is traditionally a question of fact for the jury, "a court may decide the issue of proximate cause where no rational view of the evidence warrants a finding that the defendant negligently caused the plaintiff's injuries." Augustine v. E.J. Cross, 1995 WL 808900 *3 (Mass.Super.), citing Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass.App.Ct. 901, 902 (1987).

8.    Summary judgment in a defendant's favor is appropriate where the plaintiff has no reasonable expectation of establishing causation at trial. See Coastal Aviation

Industries, Inc. v. Nelson, 2001 WL 914864 *5 (Mass.Super. 2001), citing Held v. Bail, 28 Mass.App.Ct. 919, 921 (1989).

9.  Massachusetts courts require plaintiffs claiming negligent supervision to show that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action. See RLI Insurance Company v. Wood Recycling, Inc. v. International Insurance Group, Ltd., 2006 WL 839514 *4(D.Mass. 2006); citing Vicarelli v. Business Int'l, Inc., 973 F.Supp. 241, 246 (D.Mass. 1997).

10. Under Massachusetts law, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for **torts** of its employee, or servant, committed within the scope of employment. See Pearce v. The Duchesneau Group, Inc. 392 F.Supp.2d 63, 76 (2005); citing Kavanagh v. Trustees of Boston University, 440 Mass. 195, 198 (2003).

11. Where "inferences of causation would be outside a factfinder's realm of common knowledge, expert testimony is necessary to assist the factfinder to understand the evidence and determine the facts in issue. See Carifio v. Benetton Sportsystem, 2005 WL 1527801 *2 (D.Mass.); citing Calvanese v. W.W. Babcock Co., Inc. 10 Mass.App.Ct. 726, 734 n. 9 (1980).

12. "Expert testimony is admissible only if it is both relevant **and reliable**. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999).

13. "Expert opinion testimony must be 'based upon **sufficient facts or data**' and be the 'product of reliable principles and methods' applied 'reliably to the facts of the case.'"

Carifio v. Benetton Sportsystem, 2005 WL 1527801 *2 (D.Mass.); citing Fed.R.Evid. 702.

14.    "Where the facts in issue necessitate expert testimony but do not clearly point to a determinative cause of the accident, an expert may infer a 'plausible explanation from the evidence.'" See Carifio at *2; citing Pace v. Ins. Co. of N.Am., 838 F.2d 572, 578 (1st 1988).

15.    "However, 'the inferences must be reasonable and must be based on probabilities rather than possibilities and **may not be the result of mere speculation and conjecture**. Carifio at *2; citing Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 101 (1988).

16.    In applying the Daubert analysis, the U.S. Supreme Court excluded the tire failure analyst's expert [Dennis Carlson, Jr.] testimony that the subject tire failed due to a manufacturing or design defect on the ground that it did not satisfy Rule 702 of the Federal Rules of Evidence, which states

> "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) **the testimony is based upon sufficient facts or data**, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. Rule 702 (emphasis added).

17.    The doctrine of res ipsa loquitor "permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff, are

sufficiently eliminated by the evidence." Enrich v. Windmere Corp., 416 Mass. 83 (1993); see also Wilson v. Honeywell, Inc., 409 Mass. 803 (1991).

18.  In res ipsa loquitor cases, "the jury must be able to find, either by expert evidence or by their own common knowledge, that the mere occurrence of the accident shows negligence as a cause." See Enrich at 1085.

19.  "The mere happening of an accident caused by a defective condition of the vehicle is not evidence of the owner or operator's negligence". See 11 MAPRAC, Motor Vehicle Law And Practice §3.5 (3d. ed. 2006), citing, Pellegatti v. Pellegatti, 345 Mass. 591 (1963)(Where a front tire on a motor vehicle blew out and caused an accident, findings were not warranted that the tire was defective or that the defendant was negligent, or evidence that the defendant owner of the vehicle had prior knowledge that the treads in the tires were "not good", that the "tires were bad", and that the tire which blew out was "bald").

20.  "The doctrine of res ipsa loquitur does not apply, and an inference or presumption of negligence may not be made, where an injury results from the blowout of a tire. Rather, the Plaintiff must establish that the tire was defective and that the defect was known or could have been discovered by the exercise of reasonable care". See 61 C.J.S. Motor Vehicles § 1039 (May 2006)(citing cases).  See also, 8 Am. Jur. 2d Automobiles and Highway Traffic § 831 (May 2006)("Where it is not shown that the owner or operator had knowledge, or should have had knowledge, of the defective condition of the tires, the resulting accident is considered to have been unavoidable and he cannot ordinarily be held liable")(citing cases).

WHEREFORE, the Defendants, Kalemba Jodan (herinafter "Jodan"), Iron Mountain Information Management, Inc. (hereinafter "Iron Mountain") and Ryder Truck Rental (hereinafter "Ryder") (collectively "Defendants"), request that their Motion for Summary Judgment be allowed against the Plaintiff, Desiree Allaire.

Respectfully submitted,

The Defendants,
Kalemba Jodan, Iron Mountain Information Management, Inc. and Ryder Truck Rental
By their attorney,

_____
Mark B. Lavoie, BBO# 553204
McDonough, Hacking & Lavoie, LLC
One Washington Mall
Boston, MA  02108
(617) 367-0808

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing pleading on all parties by electronic service, to all counsel of record.
Signed under the pains and penalties of perjury.

DATED: _____
August 30, 2006